In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1605

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BARNETT K. FUNG,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-CR-00759(1) — **Jorge L. Alonso**, *Judge.*

ARGUED DECEMBER 9, 2025 — DECIDED JULY 24, 2026

Before HAMILTON, ST. EVE, and PRYOR, *Circuit Judges.*

PRYOR, *Circuit Judge.* A jury convicted Dr. Barnett K. Fung
of knowingly and intentionally dispensing a controlled sub-
stance outside of the usual course of professional practice and
without a legitimate medical purpose in violation of 21 U.S.C.
§ 841(a). The district court sentenced him to six months' incar-
ceration and imposed a $50,000 fine. Dr. Fung now appeals,
challenging the sufficiency of the evidence supporting his
conviction, the district court's evidentiary rulings, the denial

of his motion for a mistrial, and the imposition of a fine at sentencing. Finding none of Dr. Fung's challenges persuasive, we affirm.

## I.   BACKGROUND

Dr. Fung was a podiatrist licensed to practice medicine in Illinois who held a Drug Enforcement Administration ("DEA") registration number, permitting him to prescribe controlled substances. After an investigation into his opioid prescription practices, a grand jury indicted Dr. Fung in a superseding indictment on 74 charges of violating 21 U.S.C. § 841(a)—each count represented an individual opioid prescription the government alleged was unlawful. Specifically, Counts One through Six involved prescriptions to Dennis King, an undercover DEA agent purporting to be Frank Castle; Count Seven covered a prescription to Emilia Fernandez, an undercover DEA agent purporting to be Emilia Figueroa; Counts Eight through 28 involved prescriptions to Dr. Fung's patient S.J.; Counts 29 through 48 involved prescriptions to Dr. Fung's patient T.S.; and Counts 49 to 74 covered prescriptions to Dr. Fung's patient Y.E. A jury found Dr. Fung not guilty on 73 counts but convicted him on Count Seven.

### A.  Factual Background

The following facts underlying Dr. Fung's conviction on Count Seven are set forth "in the light most favorable to the government." *United States v. Jones*, 79 F.4th 844, 847 (7th Cir. 2023).

On April 5, 2017, Special Agent Fernandez posed as a patient named Emilia Figueroa and visited Dr. Fung at his office while wearing a hidden audio and video recording device. At the beginning of her appointment, Special Agent Fernandez

indicated that "Frank Castle," another undercover DEA agent who posed as a patient, recommended she visit Dr. Fung. Dr. Fung asked Special Agent Fernandez what was wrong, and she answered she didn't "have pain, just discomfort" in her feet from "waitressing long hours." Special Agent Fernandez explained that some other "girls" and "Frank" would give her pills to help, but she emphasized she was "not in pain" and was experiencing "just discomfort." In response, Dr. Fung told Special Agent Fernandez the pills "from Frank" were narcotics. And then the following exchange occurred:

> FUNG: You will get addicted after a while. You will hurt your heart, your lung, and your liver…. Especially if you don't have pain it's just making you feel comfortable because that is a narcotic portion. The narcotic portion makes you feel comfortable.
>
> FERNANDEZ: Yes.
>
> FUNG: Right. So I really don't advise you to take it, but if you are here and it's the first time you come, I will write some for you.
>
> FERNANDEZ: Okay thank you doc.

Dr. Fung prescribed Special Agent Fernandez 90 pills of hydrocodone, an opioid, in a dosage strength of 10mg, combined with 325mg of acetaminophen (a combination commonly known by its brand name Norco). Dr. Fung did so without taking Special Agent Fernandez's vital signs, asking her to remove her shoe, examining her foot, making a diagnosis, creating a treatment plan of care, or documenting the patient visit. Moreover, during her visit, Special Agent Fernandez did not complete any forms, and she was never asked

about her mental health or medical history. Dr. Fung, though, did ask Special Agent Fernandez if she had insurance, to which she responded she did not, and so he charged her $80 for the visit.

### B. Pretrial Motions

In advance of trial, Dr. Fung filed a motion *in limine* to exclude evidence and arguments regarding patient addiction as unduly prejudicial under Federal Rule of Evidence 403. The district court granted the motion in part, finding the government could elicit testimony about his patients' addictions only "to the extent that the testimony is directed to what Dr. Fung knew about them."

In that same motion *in limine*, Dr. Fung sought to bar the testimony of the government's witness Thinh Nguyen, a pharmacist who worked at a Walgreens near Dr. Fung's office. Dr. Fung argued that Nguyen's testimony would be improper expert testimony presented by a lay witness in violation of Federal Rule of Evidence 701 and was also unduly prejudicial under Rule 403. In response, the government submitted that Nguyen would testify to the fact that he told Dr. Fung that his prescriptions were flagged as abnormal and that the pharmacy would no longer fill them. This testimony, in the government's view, was not opinion testimony and was relevant to demonstrating Dr. Fung's knowledge and intent. The district court agreed. To prevent Nguyen's testimony from trespassing into expert territory, though, the court limited Nguyen's testimony to "a description … in factual terms, not normative terms, of what [Nguyen] observed, the fact that [Nguyen] reached out, [Nguyen's] interactions with [Dr. Fung], and the resulting decision to stop filling [Dr. Fung's]

prescriptions." The court forbade testimony "about [Nguyen's] own conclusions[] [or] own opinions."

**C. Trial**

Dr. Fung proceeded to trial on October 22, 2024. The jury reviewed the audio and video recording from Special Agent Fernandez's visit. It also heard testimony from multiple lay witnesses, including, as relevant here, DEA Diversion Investigator Anita Kasza, Nguyen, and Special Agent Fernandez. And the jury heard expert testimony from Dr. Adam Fleischer, an expert in the field of podiatry, and Dr. Timothy King, an expert in the field of pain management.[1]

Trial evidence revealed that during an interview with Investigator Kasza, Dr. Fung identified certain of his patients as "problem patients" who may have been drug-seeking or abusing their medications. Dr. Fung also explained that he was a "softy" who knew he should be "tougher" with the "problem patients." And when questioned by Investigator Kasza, Dr. Fung did not recognize the name Emilia Figueroa, the pseudonym Special Agent Fernandez used.

The jury also heard from Nguyen who testified "there was a time that [the pharmacy] saw a lot of prescriptions from Dr. Fung." Because of this high volume, Nguyen called Dr. Fung "to verify … [that a] prescription [was] valid[] [and] to make

---

[1] Other government witnesses who testified included T.S. (patient), Y.E. (patient), S.J. (patient), Dennis King (undercover law enforcement officer who was Dr. Fung's patient under the pseudonym Frank Castle), and Joshua Blankenship (DEA Special Agent who conducted a search of Dr. Fung's office). Dr. Fung called two witnesses: Genevieve Kelley (an employee at Dr. Fung's office) and Dr. James Patrick Murphy (an expert in pain medicine).

sure the prescription [was] for [a] legitimate medical pur-
pose." Dr. Fung responded to Nguyen's inquiry by stating,
"You know, that's what I wrote. Fill it. If you don't feel com-
fortable, have [the] patient go somewhere else." Nguyen con-
firmed the pharmacy eventually stopped filling prescriptions
from Dr. Fung and testified he "told [Dr. Fung] '[w]e
stop[ped] filling your prescription[s] because we saw that you
issued the prescription[s] on a monthly basis without a clear
treatment plan for the future.'"

Special Agent Fernandez authenticated the audio and
video recording of her visit. She confirmed that she was not
medically evaluated during her visit with Dr. Fung. In addi-
tion, she explained that Dr. Fung did not make a diagnosis
and did not create a treatment plan beyond the opioid pre-
scription. She further testified that Dr. Fung failed to conduct
a follow-up visit. Yet, she said that Dr. Fung still prescribed
her narcotics.

All of that, Dr. King testified, was contrary to what would
occur in an ordinary visit where a podiatrist, among other
things, typically takes a patient's medical history, physically
examines the patient's feet, conducts a neurological examina-
tion, develops a treatment plan for the patient, and creates
records that explain why the podiatrist is undertaking a par-
ticular action. Dr. Fleischer echoed Dr. King's testimony re-
garding the typical practices of podiatrists. Like Dr. King, Dr.
Fleischer confirmed that during an ordinary visit to a podia-
trist, a patient's medical history is taken, and the podiatrist
performs a medical examination, develops a treatment plan
for the patient, and creates a record of their visit. While Dr.
Fleischer did not offer an opinion on the appropriateness of
Dr. Fung's prescription to Special Agent Fernandez, Dr. King

opined that there was no legitimate medical purpose for the hydrocodone Dr. Fung prescribed to her. In Dr. King's view, Dr. Fung prescribed it outside the usual course of professional practice.

During the government's direct examination of Dr. King, which focused on Dr. Fung's treatment of all of his patients, the following exchange regarding Patient Y.E., who had a butcher knife fall through her foot, occurred:

> Q: If someone comes in with a hole in their foot, is it appropriate for some period of time to write for a controlled substance?
>
> A: [Analysis of Patient Y.E.'s medical condition.] There's nothing here. There's not a medical condition that was established that would support the use of opiates. So that might have been a historical incident of interest. Her problem, however, was that she was self-admitted addicted to her medications.

Dr. Fung immediately objected, and the government interrupted Dr. King's testimony and pivoted to asking him a question regarding Patient Y.E.'s nerve damage. The court did not rule on Dr. Fung's objection.

Dr. King's direct examination concluded shortly thereafter. Dr. Fung then moved for a mistrial because testimony regarding patient addiction was not permitted unless Dr. Fung knew about the patient's addiction, and Dr. King's statement about Y.E. was based on interviews he reviewed between Y.E. and DEA agents. The district court denied the motion because: (1) Dr. King's answer was not elicited by the government's question; (2) the response came at the end of a long

answer and Dr. King had been testifying for some time; (3) the government cut Dr. King off once he made the statement; and (4) the court did not believe Dr. King made the statement to prejudice Dr. Fung. In essence, the court explained that Dr. King's comments were "inadvertent, isolated, and ambiguous," and it offered to provide a clarifying instruction to the jury. The parties, however, declined the suggested curative tactic.

After deliberating, the jury convicted Dr. Fung on Count Seven of the Superseding Indictment, which concerned the treatment of Special Agent Fernandez. The jury found Dr. Fung not guilty on the remaining 73 counts of the Superseding Indictment.

### D. Post-Trial Motions

Following the guilty verdict, Dr. Fung moved for a judgment of acquittal because of allegedly insufficient evidence under Federal Rule of Criminal Procedure 29(c). And preserving his prior objections to the testimony of Nguyen and the denial of his motion for a mistrial based on Dr. King's statements, Dr. Fung moved for a new trial under Federal Rule of Criminal Procedure 33(a).

The district court denied both motions. With respect to the Rule 29(c) motion, the court reasoned "the video depicting" Special Agent Fernandez's visit and the testimony of the witnesses provided "ample evidence" to support Dr. Fung's conviction. As for Dr. Fung's Rule 33(a) motion, the court rejected his arguments for the same reasons it previously gave. With respect to Dr. Fung's objection to Nguyen's testimony, the district court found Nguyen's testimony was properly limited. And regarding Dr. King's testimony, the district court

emphasized that Dr. Fung's conviction on Count Seven did not relate to Y.E.; the court offered a curative instruction that the parties declined; and the statement was isolated, ambiguous, and did not impute any knowledge to Dr. Fung regarding Y.E.'s addiction issues.

The district court sentenced Dr. Fung to six months' incarceration followed by three years of supervised release. The court also imposed a fine of $50,000.

This appeal followed.

## II.    ANALYSIS

We have considered all of the issues Dr. Fung has raised on appeal and find only four merit discussion. First, whether the district court abused its discretion in allowing Nguyen to testify as a lay witness under Federal Rules of Evidence 701 and 403. Second, whether the district court abused its discretion in denying Dr. Fung's motion for a mistrial. Third, whether sufficient evidence supported the jury's verdict. And fourth, whether the district court adequately considered the appropriate factors before imposing the $50,000 fine.

The first two issues we review for abuse of discretion. *United States v. Johnson*, 89 F.4th 997, 999 (7th Cir. 2024) (evidentiary rulings); *United States v. Lowe*, 2 F.4th 652, 658 (7th Cir. 2021) (motion for mistrial). As for the other two issues, we review them de novo. *United States v. Jones*, 79 F.4th at 853 (sufficiency of the evidence); *United States v. Johnson*, 131 F.4th 811, 814 (7th Cir. 2025) (procedural sentencing challenges).

### A. Admission of Nguyen's Testimony

Dr. Fung challenges the district court's decision to permit Nguyen to testify as a lay witness as violative of Federal Rules of Evidence 701 and 403. We evaluate each objection in turn.

The Federal Rules of Evidence distinguish between expert and lay testimony. *Patterson v. Baker*, 990 F.3d 1082, 1085 (7th Cir. 2021). Under Rule 701, a witness not testifying as an expert may offer testimony in the form of an opinion when the testimony is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Chi. Joe's Tea Room, LLC v. Village of Broadview*, 94 F.4th 588, 597 (7th Cir. 2024). The opinion must draw upon the witness's personal knowledge, and the witness must testify "in terms of what they saw, heard, or did in particular circumstances" and not tether their inferences to "any specialized training or experience." *Patterson*, 990 F.3d at 1085 (citation modified).

Rule 702, on the other hand, governs the admissibility of expert witness testimony that draws on "scientific, technical, or other specialized knowledge to help the finder of fact understand evidence or to determine a fact at issue." *Id.* [2] Such testimony can come only from a witness who is qualified to offer the opinion at issue and "will help the factfinder understand the evidence, finds support in sufficient facts or data, and reflects the product of reliable methods or principles, re-

---

[2] An additional hurdle for introducing expert testimony in criminal cases lies in Federal Rule of Criminal Procedure 16, which imposes certain disclosure obligations. *See* FED. R. CRIM. P. 16.

liably applied to the facts of the case." *United States v. Thomas*, 970 F.3d 809, 813 (7th Cir. 2020).

The line between expert and lay testimony "is not always sharp." *Chi. Joe's Tea Room*, 94 F.4th at 596. As we have explained, "lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Christian*, 673 F.3d 702, 709 (7th Cir. 2012) (citation modified). As such, the distinction "is not between 'expert and lay *witnesses*, but rather between expert and lay testimony.'" *United States v. Fenner*, 142 F.4th 510, 517 (7th Cir. 2025) (emphasis in original) (quoting *Christian*, 673 F.3d at 709). So, a witness who may be considered an expert for certain purposes or in certain areas may still offer lay opinions based on her personal knowledge. *See id.* That is, a person's expertise in one area does not disqualify him as a lay witness for all purposes. To decide on which side of the evidentiary line testimony falls, we inquire into "the nature of the testimony itself." *Chi. Joe's Tea Room*, 94 F.4th at 596.

Dr. Fung does not dispute that Nguyen's testimony was based on his rational perception and helpful to the jury to understand a fact in issue. Dr. Fung contends, however, that Nguyen's testimony rested on specialized knowledge within the heartland of Rule 702 in violation of Rule 701. In other words, Dr. Fung argues the district court abused its discretion by admitting Nguyen's testimony as that of a lay witness, under Rule 701, rather than that of an expert witness, under Rule 702.

We disagree. Prior to trial, the district court confined Nguyen's testimony to factual descriptions of Nguyen's observations, actions, and interactions with Dr. Fung. The court for-

bade Nguyen to testify about his own conclusions or opinions as a pharmacist. Nguyen followed that instruction. He never opined on any medical standard of care or testified that Dr. Fung violated any purported standard to warrant introduction as an expert under Rule 702. Based solely on his personal knowledge as a pharmacy employee, Nguyen testified in factual terms that the pharmacy received a lot of opioid prescriptions from Dr. Fung; he called Dr. Fung to verify the prescriptions; he relayed to the jury what Dr. Fung told him in response; and he described to the jury what he told Dr. Fung was the reason for why the pharmacy stopped filling Dr. Fung's prescriptions.

The testimony did not rest on any specialized knowledge that veered into Rule 702 terrain and, instead, fell comfortably within Rule 701's ambit even though Nguyen possessed qualifications as a pharmacist. *See Fenner*, 142 F.4th at 517 (illustrating the difference between a medical doctor testifying as a lay versus expert witness); *United States v. Malagon*, 964 F.3d 657, 662 (7th Cir. 2020) ("Nothing in his testimony indicates that [the officer's] testimony is based on specialized knowledge, as opposed to his understanding of the conversation as a participant in it."); *United States v. Bowling*, 952 F.3d 861, 868 (7th Cir. 2020) (holding witness testified as a lay witness and not an expert witness when she did not draw "an inference from the evidence or offer[] a legal opinion or conclusion that [the defendant] had in fact committed fraud" but simply "testified as to her reaction at the time based on her own perception"). Any person who worked at the pharmacy, expert or otherwise, could have testified to that information had they been the person communicating with Dr. Fung. Thus, the district court did not abuse its discretion in admitting Nguyen's testimony under Rule 701.

Nor did the district court abuse its discretion by not excluding the testimony under Rule 403. Under Rule 403, a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice." FED. R. EVID. 403. Given "the context-sensitive application of Rule 403, 'we give special deference' to the district court's findings and reverse only when 'no reasonable person could take the view adopted by the trial court.'" *Johnson*, 89 F.4th at 1002 (quoting *United States v. LeShore*, 543 F.3d 935, 939 (7th Cir. 2008)).

Dr. Fung insists he faced unfair prejudice because Nguyen's testimony showed "that at least one medical professional thought Dr. Fung's prescribing practices were outside the norm." But the government separately offered the opinion and testimony of one medical expert, Dr. Fleischer, who described the appropriate procedures and standards of care in podiatry and another, Dr. King, who opined that Dr. Fung's prescription dispensing practices were improper. And Nguyen's testimony was probative of Dr. Fung's knowledge, which was a hotly contested issue in the case. To avoid any unfair prejudice that may have resulted, the district court properly limited Nguyen's testimony. For these reasons, we conclude the probative value of Nguyen's short, tailored testimony was not substantially outweighed by unfair prejudice. *Cf. United States v. Dukes*, 147 F.4th 711, 718 (7th Cir. 2025) (noting nearly all evidence is prejudicial, so evidence must be "*unfairly* prejudicial to require exclusion" (emphasis in original) (quoting *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012))).

**B. Dr. King's Testimony**

Next, Dr. Fung contends the district court erred in denying his motion for a mistrial based on Dr. King's testimony that Y.E. "was self-admitted addicted to her medications" in violation of the court's pretrial ruling.

Our review of the district court's decision on this front is "highly deferential because the trial judge is in the best position to determine the seriousness of the incident in question, particularly as it relates to what has transpired in the course of the trial." *United States v. Bermea-Boone*, 563 F.3d 621, 625 (7th Cir. 2009) (quoting *United States v. Danford*, 435 F.3d 682, 686 (7th Cir. 2006)). "A mistrial is appropriate when an event during trial has a real likelihood of preventing a jury from evaluating the evidence fairly and accurately, so that the defendant has been deprived of a fair trial." *United States v. Hilliard*, 851 F.3d 768, 778 (7th Cir. 2017) (citation modified). A district court's denial of a motion for a mistrial is reviewed for abuse of discretion. *Id.* And we will affirm the district court's decision unless the error was harmful. *See United States v. Giannini*, 104 F.4th 667, 671 (7th Cir. 2024).

Dr. Fung presses on appeal that Dr. King intentionally made the objectionable statement to prejudice Dr. Fung and rob him of a fair trial.

We are unpersuaded and see no abuse of the district court's discretion in denying Dr. Fung's motion for a mistrial based on the sole, stray statement Dr. King made. For one, we have emphasized testimony does not warrant a mistrial if it is "inadvertent, isolated and ambiguous." *United States v. Curry*, 538 F.3d 718, 728 (7th Cir. 2008). Dr. King's remark imputes no wrongdoing onto Dr. Fung or suggests he knew of, or

fueled, any addiction issues Y.E. had. Moreover, the statement came after hours of direct examination on various topics, undercutting Dr. Fung's contention that the statement was intentionally offered to prejudice Dr. Fung. Additionally, the testimony was never mentioned again or used against Dr. Fung, further minimizing any room for potential unfairness. *See id.*; *United States v. Diggs*, 81 F.4th 755, 761–62 (7th Cir. 2023) (affirming denial of a motion for a mistrial because objectionable testimony "was never mentioned again"); *United States v. Lane*, 591 F.3d 921, 927 (7th Cir. 2010) (same for testimony never used against the defendant).

For another, the jury acquitted Dr. Fung on every count related to the prescriptions he wrote for Y.E., undermining any reasonable inference that Dr. King's statement prejudiced Dr. Fung with respect to his conviction for prescribing narcotics to Special Agent Fernandez. *See Giannini*, 104 F.4th at 671 ("[P]rejudice from the violation must have deprived [the defendant] of a fair trial."). What's more, as explained next, the evidence to convict Dr. Fung on Count Seven was "overwhelming." *Diggs*, 81 F.4th at 762.[3]

---

[3] When faced with a motion for a mistrial, a district court may issue a curative instruction to shield the defendant against any unfair prejudice. *United States v. Lawrence*, 788 F.3d 234, 244 (7th Cir. 2015). Here, however, we find no unfair prejudice occurred, so a curative instruction was not required—even if advisable. *United States v. Diggs*, 81 F.4th 755, 761–62 (7th Cir. 2023); *United States v. Lane*, 591 F.3d 921, 927 (7th Cir. 2010). It is also worth noting that the parties agreed to decline the district court's invitation to issue a curative instruction.

Thus, we conclude the district court acted within its discretion in denying Dr. Fung's motion for a mistrial.

### C. Sufficiency of the Evidence

Dr. Fung continues his attack on the proceedings below by arguing that there was insufficient evidence to support his conviction for violating 21 U.S.C. § 841(a). In deciding this question, we give deference to the jury's verdict, *United States v. Jones*, 79 F.4th at 853, and determine "only whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the government," *United States v. Shelton*, 997 F.3d 749, 757 (7th Cir. 2021). We will set aside a conviction "only where the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Jones*, 79 F.4th at 853 (quoting *United States v. Leal*, 72 F.4th 262, 267 (7th Cir. 2023)). That burden is "nearly insurmountable." *Id.* (quoting *Leal*, 72 F.4th at 267). "At the same time, 'the height of the hurdle depends directly on the strength of the government's evidence,' and 'a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt.'" *United States v. Moreno*, 922 F.3d 787, 793 (7th Cir. 2019) (quoting *United States v. Garcia*, 919 F.3d 489, 496–97 (7th Cir. 2019)); *see also Jackson v. Virginia*, 443 U.S. 307, 317 (1979); *United States v. Jones*, 713 F.3d 336, 339 (7th Cir. 2013).

Under the Controlled Substances Act, it is a federal crime "[e]xcept as authorized[,] … for any person knowingly or intentionally … to manufacture, distribute, or dispense … a controlled substance," such as opioids. 21 U.S.C. § 841(a)(1). In that vein, a prescription authorized by a health care pro-

vider is authorized only when he issues it "for a legitimate medical purpose … acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). To bear its burden that an authorized healthcare provider violated § 841(a), the government "must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so." *Ruan v. United States*, 597 U.S. 450, 454 (2022).

At bottom, Dr. Fung argues there was insufficient evidence that he knew he was acting in an unauthorized manner when he prescribed opioids to Special Agent Fernandez. As a brief overview, recall that the jury saw a video where Special Agent Fernandez described discomfort and not pain, and Dr. Fung did not take her vital signs or medical history, examine her foot, or even document her visit. Yet, he prescribed her opioids because she was visiting his office for the "first time." What's more, the jury heard from two experts, one of whom opined Dr. Fung did not have a legitimate medical purpose for the drug he prescribed to Special Agent Fernandez and that he did so outside the usual course of professional practice. And Dr. Fung continued business as normal after being told by a pharmacy that it would no longer fill his prescriptions. Plus, he called himself a "softy" with certain patients who sought opioids.

Facing this pile of evidence, Dr. Fung argues that if there was insufficient evidence to convict him on 73 counts, as the jury found, there was insufficient evidence to convict him on Count Seven. But his reasoning rests on faulty logic. The acquittal on the 73 counts shows the jury adeptly sifted through the evidence—as opposed to rubber stamping what the government proffered. Indeed, the other four individuals who re-

ceived the prescriptions in the other 73 counts were situated differently than Special Agent Fernandez. Those patients told Dr. Fung they were in pain; Dr. Fung medically examined them and often tried types of treatment other than prescribing opioids; he refused to prescribe opioids for a girlfriend of one of his patients; and he was weaning off three others from opioids by prescribing lower dosages over time. But faced with the evidence regarding the prescription Dr. Fung issued to Special Agent Fernandez and presented with the same arguments Dr. Fung raises before us, the jury convicted Dr. Fung on Count Seven. Substantial evidence supported that decision.

### D. Fine

Finally, Dr. Fung lodges a procedural challenge to his sentence, arguing the district court failed to consider the proper factors when it imposed a fine of $50,000 at sentencing.

#### 1. Sentencing Hearing

Before sentencing, the Presentence Investigation Report (PSR), compiled by the United States Probation Office, provided an analysis of Dr. Fung's net worth, monthly cash flow, and tax returns. It concluded Dr. Fung had "the means to make an immediate lump sum payment towards a potential fine" or "installment payments" towards a potential fine, but the probation office recommended no fine be imposed. Dr. Fung echoed the request. The government, however, sought an above-guidelines fine.

At the sentencing hearing, the district court calculated Dr. Fung's total offense level as 12 and determined he fell within criminal history category I, and so, Dr. Fung faced a fine range of $5,500–$1,000,000. 18 U.S.C. § 3571(b); U.S.S.G. § 5E1.2(c).

After hearing argument regarding the parties' positions, and "assessing the particular facts of the case, in light of the relevant 3553(a) factors, including the guidelines," the court imposed a $50,000 fine. In reaching this conclusion, the court stated, "the offense [was] serious" because Dr. Fung knew how dangerous the drugs were but dispensed them to Special Agent Fernandez without any examination and did it just because she was there in his office for the first time. Moreover, the district court reasoned "Dr. Fung was not a softy when it came to collecting his fee in this case according to the evidence." The court further stated Dr. Fung's actions "represented an abdication of his oath and his duty as a medical provider" and an appropriate sentence was necessary to deter other medical professionals from engaging in this type of behavior. The court also emphasized that Dr. Fung's conduct occurred during the middle of the opioid pandemic sweeping the country.

### 2. *Analysis*

United States Sentencing Guideline § 5E1.2 "mandates the imposition of a fine unless 'the defendant establishes that he is unable to pay and is not likely to become able to pay any fine.'" *United States v. Lee*, 950 F.3d 439, 444 (7th Cir. 2020) (quoting U.S.S.G. § 5E1.2(a)). The defendant bears a heavy burden to demonstrate he cannot pay a fine, and we will only reverse that factual finding if it is clearly erroneous. *Id.* To determine an appropriate fine, § 5E1.2(d) provides that a district court "shall consider" the following factors:

> (1) the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to

provide just punishment and to afford adequate deterrence;

(2) any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;

(3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;

(4) any restitution or reparation that the defendant has made or is obligated to make;

(5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;

(6) whether the defendant previously has been fined for a similar offense;

(7) the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed; and

(8) any other pertinent equitable considerations.

U.S.S.G. § 5E1.2(d). "Similar 'factors to be considered' can be found at 18 U.S.C. § 3572(a)." *See Lee*, 950 F.3d at 445 (quoting 18 U.S.C. § 3572(a)).

But "[w]hen imposing a fine, a district judge need not make express or specific findings regarding each of the relevant factors, although an express finding may nonetheless be made by adopting the PSR's facts." *Id.* (internal citation omitted). *Lee* is instructive on this point. *See id.* at 445–47. There, the district court adopted the PSR's findings of fact but re-

jected the probation officer's recommendation of no fine. *Id.* at 446–47. The district court emphasized the seriousness of the defendant's offense, sought to deprive him of his ill-gotten gains, and wanted to deter others from attempting to profit from illicit enterprises. *Id.* at 445. Moreover, the PSR contained information regarding the defendant's lack of dependents, pecuniary loss, and restitution. *Id.* at 446. By adopting the facts in the PSR, the district court sufficiently supported its decision, especially because the PSR findings regarding the defendant's assets exceeded the fine amount. *Id.* at 446–47.

We think the district court did enough to support the imposition of the within-guidelines fine here. First, like *Lee*, the parties concede the district court adopted the PSR's factual findings, which included an analysis of Dr. Fung's finances and concluded he had the means to pay a fine. Notably, the PSR reflected that Dr. Fung possessed assets and a total net worth multiple times in excess of the fine amount the court ultimately imposed. Second, the parties agree Dr. Fung has the ability to pay a fine. Thus, the probation office's recommendation of no fine was plainly contrary to law. *Lee*, 950 F.3d at 444–45. And by imposing the fine, the court rejected, albeit without explicitly saying so, the probation office's legally unsound conclusion. *Id.* at 444–47. Third, like *Lee*, the court heard argument regarding the fine and considered various factors on the record such as the seriousness of the offense, Dr. Fung's personal history, deterrence, the collateral consequences of his conviction, and other pertinent equitable considerations. Accordingly, we see no error in the district court's within-guidelines fine determination.

## III.   CONCLUSION

For these reasons, we AFFIRM.